ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                               :

HARLEY MULLION & CO. LIMITED, ERNST RUSS    :
(UK) LTD., SCANDINAVIAN SHIPPING,         :
                                 :

                   Plaintiffs,     :   Case No. 08 CV 5435 (BSJ)

   - against -                        :
                                 :
CAVERTON MARINE LIMITED,         :
                 Defendant.   :

------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANT'S**
**MOTION TO VACATE ATTACHMENT PURSUANT**
**TO F.R.CIV.P RULE E(4)(F) AND FOR ATTORNEY'S FEES**

 

*Submitted By:*
Watson, Farley & Williams (New York) LLP
Attorneys for Defendant Caverton Marine Limited
Christopher P. Belisle (CPB-0119)
Neil A. Quartaro (NAQ-9640)
100 Park Avenue, 31st Floor
New York, NY 10017

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

LEGAL ARGUMENT .......................................................................................... 2

    POINTS I & II - THE MARITIME ATTACHMENT SHOULD BE VACATED
BECAUSE PLAINTIFF HAS NOT ALLEGED A MARITIME CLAIM .............. 2

    POINT III - THE CONTRACT AT ISSUE IS NOT MARITIME UNDER UNITED
STATES LAW ...................................................................................................... 6

        A) & B)  There is no Maritime Jurisdiction Under Existing Case Law .............. 6

    POINT IV - THE O'NEIL DECLARATION OFFERS PLAINTIFFS NO SUPPORT ........ 12

    POINT V - THE AWARD OF ATTORNEY'S FEES IN THIS MATTER IS JUSTIFIED... 14

        A.  The Attachment was Meritless ................................................................. 15

        B.  The Improper Motive is Self-Evident....................................................... 15

CONCLUSION ................................................................................................... 16

19100462 v1

## TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping, Ltd., v. Gardner Smith Pty, Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) .2, 4, 11

*F.H. Bertling Holding KG v. Ranhill Eng'rs & Constructors Sdn. Bhd.* 2008 U.S. Dist. LEXIS 52085, 2008 WL 2693630 (S.D.N.Y. 2008)............................................................3, 4

*Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, Slip Op., 2008 WL 2035788 (Feb. 8, 2008 S.D.N.Y.) ............................................................................................14

*Kan Int'l v. Coastal Tankships U.S.A.*, 1997 WL 112541, 1997 U.S. App. LEXIS 4800 (9th Cir. Mar. 11, 1997)............................................................................................6, 7, 8, 9

*Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS*, 78 F.Supp.2d 162 (S.D.N.Y. 1999)..........................................................................................................11

*Masherah v. Dettloff*, 968 F.Supp. 336 (E.D.Mi. 1997).........................................................11

*Nisshin Shipping Co Ltd v. Cleaves & Company*..........................................................13, 14

*Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 1998 AMC 1578 (2d Cir. 1998) ..............................................................................................9, 10, 11, 14, 15

*Stolthaven Houston, Inc. v. Rachel B, et. al*, 2008 WL 2854278 (July 18, S.D.N.Y.) (J. Patterson, Jr.).........................................................................................................16

*T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F.Supp. 2d 310 (S.D.N.Y. 2006) .4, 5, 6

*Tankship Intern., LLC v. El Paso Merchant Energy-Petroleum Co.*, 428 F.Supp.2d 93 (D.Conn. 2006).......................................................................................................9, 11

**Treatises**

BENEDICT ON ADMIRALTY 8:2.04; PAGE 2-7 ........................................................................11

19100462 v1

## INTRODUCTION

Plaintiffs continue to assert a maritime cause of action despite there being no legal basis for this position, and have attached $376,186.18 in funds allegedly wired to or from Defendant. On Monday, July 21, 2008, the Court held a telephone conference with all counsel, at which Plaintiffs represented that they would provide legal authority for the proposition that English law controlled Plaintiffs' access to the United States procedural remedy of Rule B, and that Plaintiffs had precedent under United States law for their position that a claim for ship brokerage commissions gives rise to maritime jurisdiction under United States law. Plaintiffs have completely failed to produce any authority in support of these propositions.[1]

Plaintiffs' unsupportable attempt at attachment under Rule B must fail. A maritime cause of action under United States law is a pre-requisite to a Rule B attachment. Relevant case law shows that a claim for ship brokerage commissions is not a maritime claim under United States law. Likewise, controlling Second Circuit precedent, covering precisely the situation before this Court and applying the test urged by Plaintiffs, supports a finding that Plaintiffs' claims are non-maritime and therefore cannot support a Rule B attachment.

Defendant has no contact with the S.D.N.Y. other than engaging in U.S. dollar transactions. Plaintiffs' inaccurate representation that it has a maritime cause of action has led to the attachment of Defendant's funds, seriously impacted Defendant's business operations, and forced Defendant to incur significant litigation expenses to recover funds

---

[1] Plaintiffs have not served their answering papers on Defendant. Defendant obtained them via ECF, as demonstrated by the lack of a certificate of service appended to Plaintiffs' papers. Accordingly, the Court is well within its rights to rule in Defendant's favor based on Plaintiffs' failure to serve an to answer Defendants' Motion to Vacate.

that never should have been attached in the first place. Under such circumstances, this Court should have little difficulty in finding that Defendant is entitled to its costs of defense in this matter.

## LEGAL ARGUMENT

### POINTS I & II

### THE MARITIME ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF HAS NOT ALLEGED A MARITIME CLAIM

Plaintiff admits that the existence of a valid *prima facie* maritime claim is a prerequisite to the issuance of a maritime attachment order, such as the one Plaintiff obtained in this case. (Plaintiff's Memorandum of Law in Opposition to Motion to Vacate, filed July 28, 2008 ("Pltfs' Memo"), page 2). Plaintiff further recognizes that it is obliged to "demonstrate that it has 'an *in personam* claim against Defendants which is cognizable in admiralty . . . . in other words, the plaintiff's [claim] must be one which will support a finding of admiralty jurisdiction'" (Pltfs' Memo page 4, citation omitted). In the context of a Rule E hearing challenging a Rule B attachment, it is Plaintiffs' burden to show that an attachment was properly ordered and that it complied with the requirements of Rule B. *Aqua Stoli Shipping, Ltd., v. Gardner Smith Pty, Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) ("*Aqua Stoli*"). Plaintiffs cannot demonstrate either of those requirements.

Plaintiffs are unable to refer this Court to a single citable case in which a dispute over brokerage commissions was found to fall under the admiralty jurisdiction of a United States Court. Instead, Plaintiffs opt for misdirection, attempting to convince this Court that Plaintiffs' mere allegation that a claim is cognizable in admiralty is enough to support the exercise of that jurisdiction, whether or not a maritime cause of action actually

19100462 v1

exists. (*See* Pltfs' Memo point II). This ridiculous proposition is unsupportable, and the cases cited by Plaintiffs support the opposite conclusion - there is simply no merit to the instant attachment.

Plaintiffs cite *F.H. Bertling Holding KG v. Ranhill Eng'rs & Constructors Sdn. Bhd.* 2008 U.S. Dist. LEXIS 52085, 2008 WL 2693630 (S.D.N.Y. 2008) (J. Scheindlin) for the proposition that "some cases within the district have held that the admiralty claim 'must be valid under the substantive law that will govern the underlying action,' while others have held that the plaintiff satisfies the *prima facie* standard 'if the complaint merely demonstrates that the plaintiff has a claim that is cognizable in admiralty'. (Pltfs' Memo page 5). Plaintiffs mis-state Judge Scheindlin's decision by omitting the remainder of the quoted sentence, which actually reads:

> While there is some division within this district over the question of what constitutes a "valid prima facie admiralty claim," [FN: *See id.* (noting that some cases within the district have held that the admiralty claim "must be valid under the substantive law that will govern the underlying action," while other cases have held that the plaintiff satisfies the prima facie standard if "the complaint merely demonstrates that the plaintiff has a claim that is cognizable in admiralty."] **there seems to be little disagreement that the "inquiry focuses on whether the plaintiff has a claim cognizable in admiralty."**

2008 WL 2693630, *3 (Slip Op. S.D.N.Y., 2008) (emphasis added).

By omitting the emphasized language, the absence of which is not noted by an ellipsis, Plaintiffs pretend that Judge Scheindlin recognized that a foreign law might control Plaintiffs' ability to assert maritime jurisdiction. However, Judge Scheindlin's entire inquiry was actually premised on whether or not the Court could exercise the "maritime jurisdiction

19100462 v1

granted by section 1333 of title 28 of the United States Code". 2008 WL 2693630, *3. Finding that the contract at issue in *F.H. Bertling Holding KG* was not maritime in nature, Judge Scheindlin vacated the plaintiff's attachment. *Id.* Unsurprisingly, the case is entirely devoid of any discussion of a United States federal admiralty jurisdiction premised on a foreign cause of action. *See id.*.

Plaintiffs also cite *T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.*, 415 F.Supp. 2d 310 (S.D.N.Y. 2006) for the same principles as *F.H. Bertling Holding KG*. (Pltf's Memo page 5). However, *T&O Shipping* provides no support for Plaintiffs' position, and Plaintiffs simply ignore the portions of the case that do not support them. At the outset, Plaintiffs' parenthetical citation, "the law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable" was specifically overruled by the Second Circuit in *Aqua Stoli*, which dispensed of the "reasonableness" inquiry referenced by Plaintiff. (Pltfs' Memo page 5; *Aqua Stoli* at 446, FN 8). In any event, the choice of law inquiry in *T&O Shipping*, contained in the same paragraph as Plaintiffs' parenthetical citation and which remains good law, states that:

> Rule B is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law. [FN omitted] For example, in a recent case in this district, where English law was to be applied to the substantive questions in arbitration, the court applied federal law to the motion to vacate.

415 F.Supp. 2d at 314.

Thus, neither of the cases cited by Plaintiffs for the proposition that a maritime cause of action under English law somehow vests a United States Court with admiralty jurisdiction

19100462 v1

under United States law actually supports that position. Moreover, Plaintiffs' reference to *T&O Shipping* actually undermines Plaintiffs' own case when considered in light of the Declaration of Mark Terence O'Neil, an English solicitor ("O'Neil Declaration").[2]

*T&O Shipping* turned on whether or not the Plaintiff had a cause of action under an English law agreement with the defendant. *See* 415 F.Supp. 2d 310. The Court vacated the attachment on the basis that no cause of action had yet accrued under the agreement, according to English law. 415 F.Supp. 2d at 316. *T&O Shipping* thus exposes a major weakness of Plaintiffs' claims when considered in light of the O'Neil Declaration. According to Mr. O'Neil, Plaintiffs do not now have a cause of action against Defendant, but will instead appeal to the equitable powers of an arbitration tribunal to "rectify" the underlying agreements, which currently contain no reference to either Plaintiffs or their alleged commissions, to include this information. Once the arbitration tribunal has exercised this equitable remedy, Mr. O'Neil speculates, Plaintiffs will be able to claim third-party beneficiary status under the Contract (Rights of Third Parties Act). This in turn, Mr. O'Neil claims, will allow Plaintiffs to assert a cause of action under the agreement. Though Mr. O'Neil does not say it, it is clear that, at the present time, Plaintiffs do not have a cognizable claim of any kind under English law. Instead, Plaintiffs rely on an uncertain contingency, namely an equitable rewriting of the underlying agreements by an arbitration panel in an arbitration that has not even commenced[3], to include them expressly.

---

[2]  For the reasons discussed below, the O'Neil Declaration is a carefully worded statement that adds nothing to this matter. The entire O'Neil Declaration is premised on the argument that an arbitrator would use equitable powers to reform the agreements at issue to expressly name Plaintiffs and expressly provide them a right to commissions under the subject charters. It is thus clear that, at present, Plaintiffs do not have a claim against Defendants, let alone a maritime claim under English law.

[3]  Mr. O'Neil claims, at paragraph 8 of his Declaration, that the London arbitration is "pending". Defendant's counsel is unaware of any such arbitration, and Defendant has not received any notice thereof. Reply

19100462 v1

Unsurprisingly, Mr. O'Neil is unable to opine or provide any authority that, in the present state of the matter, a maritime claim exists under English law. Thus, to the extent *T&O Shipping* applies to this matter, it mandates dismissal of Plaintiffs' case because Plaintiffs admittedly do not currently have a cause of action against Defendant under English law.

## POINT III

### THE CONTRACT AT ISSUE IS NOT MARITIME UNDER UNITED STATES LAW

*A) & B)  There is no Maritime Jurisdiction Under Existing Case Law*

Using the same misleading tactics, Plaintiffs argue that "under U.S. federal admiralty law, the contract is maritime in nature . . .". (Pltfs' Memo page 8). However, Plaintiffs fail to provide any authority whatsoever in support of this proposition, and instead resort to misstating the law on this point.

Plaintiffs base their entire attachment on a single unpublished Ninth District case, *Kan Int'l v. Coastal Tankships U.S.A.*, 1997 WL 112541, 1997 U.S. App. LEXIS 4800 (9th Cir. Mar. 11, 1997) ("*Kan Int'l*"), asserting that this case is "judicial precedent to support the position taken by the Plaintiffs in this case" (Pltfs' Memo page 13).  Plaintiffs go on to assert that Defendant "missed precedent from the Ninth Circuit holding that the same type of contract as the one at issue in the case at hand falls under a federal court's admiralty jurisdiction". *Id.*, page 19. This assessment of *Kan Int'l* is blatantly wrong.[4]

---

Affidavit of Neil A. Quartaro in further support of Motion to Vacate Attachment, dated August 4, 2008 ("Quartaro Aff. ", ¶ 3).

[4]  Plaintiffs opine that *Kan Int'l* "is well known in maritime circles".  The Court can draw its own conclusions about the likelihood of this decade-old unreported Ninth Circuit table opinion being "well known" to anyone.

19100462 v1

*Kan Int'l* is an unpublished Ninth Circuit case that is not citable precedent there. In order to alert any person reading that decision that this case is not precedent, the decision bears the following notation:

> This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3.

Quartaro Aff. Ex. 1; 1997 WL 112541, Caption; 1997 U.S. App. LEXIS 4800, Caption.

Furthermore, Ninth Circuit Rule 36-3, "Citation of Unpublished Dispositions or Orders" provides:

> **(a) <u>Not Precedent</u>:** Unpublished dispositions and orders of this Court are not precedent, except where relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion. . . .
>
> and
>
> **(c) <u>Citation of Unpublished Dispositions and Orders Issued before January 1, 2007</u>:** Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit . . . .

Quartaro Aff. Ex. 2 (emphasis in original).

Accordingly, and contrary to Plaintiffs' representations to this Court, *Kan Int'l* is not judicial precedent of any kind. *Id.* In fact, this case cannot even be cited in the Courts of the Ninth Circuit, absent circumstances not present here. *Id.* Plaintiffs' attempts to characterize *Kan Int'l* as precedent that should guide this Court are disingenuous, and should be ignored.

19100462 v1

In addition to ignoring the Ninth Circuit precedent and citation rules, Plaintiffs also ignore those of this Circuit. Second Circuit Local Rule 32.1, "Dispositions by Summary Order", provides:

> (b)   Precedential Effect of Summary Orders
>        Rulings by summary order do not have precedential effect.
>
> And
>
> (c)(2)  Citation to summary orders filed prior to January 1, 2007, is
> not permitted in this or any other court . . . .

Quartaro Aff. Ex. 3 (Second Circuit Local Rule 32.1); *See also* F.R.App.P. 32.1.

The policy behind this rule reveals why unreported decisions such as *Kan Int'l* do not provide useful guidance:

> Summary orders are therefore often abbreviated, and may omit
> material required to convey a complete, accurate understanding of
> the disposition and/or the principles of law upon which it
> rests . . . . Non-precedential summary orders are used to avoid the
> risk that abbreviated explanations in summary orders might result
> in distortions of case law.

Quartaro Aff. Ex. 3 (Second Circuit Local Rule 32.1).

The summary treatment afforded the "charterparty brokerage" referenced in *Kan Int'l* perfectly illustrates the soundness of this reasoning. The *Kan Int'l* decision gives no indication of what factors led the Ninth Circuit to its conclusion, and it is possible that the underlying agreement in that case contained actual maritime obligations in addition to the land-based charterparty brokerage services present in the instant matter. Plaintiffs' rough treatment of *Kan Int'l* does not stop here, however. In addition to ignoring the sound

19100462 v1

Ninth and Second Circuit rules regarding citation of unpublished opinions, Plaintiffs also fail to draw the Court's attention to the only case ever to mention *Kan Int'l* .

In *Tankship Intern., LLC v. El Paso Merchant Energy-Petroleum Co.,* 428 F.Supp.2d 93 (D.Conn. 2006),[5] Judge Arterton was faced with the same issue as before this Court: Whether a claim for ship brokerage services was cognizable in admiralty. As urged by Defendant in the instant matter, Judge Arterton relied on the Second Circuit opinion in *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 1998 AMC 1578 (2d Cir. 1998) ("*Drakos*").[6] Judge Arterton concluded that the Second Circuit would not, under *Drakos*, view a brokerage contract as falling under its maritime jurisdiction:

> Thus, although the Court of Appeals emphasized [in *Drakos*] "the fact specific nature of [its] decision," id., it is apparent that a contract for brokerage services would not be viewed by the Second Circuit, [FN] as affecting maritime commerce. (FN: Cf. 108 F.3d 1385 (9th Cir.1997) (unpublished table opinion) (holding that "because charterparty brokerage has a significant impact on 'maritime commerce,' " case was governed by federal admiralty law and plaintiff therefore was required to submit its claim for prejudgment interest to the jury).

428 F.Supp.2d at 99.

Inexplicably, Plaintiffs contend that an unreported summary decision, that (a) contains no background facts or analysis, (b) cannot be cited in the Circuit in which it issued or in this Circuit, (c) has no precedential value, and (d) has been treated negatively in

---

[5]  This case was cited by Defendant in its Motion to Vacate, but is not addressed in Plaintiffs' answering papers.

[6]  Plaintiffs assert that Drakos is "irrelevant" to the enquiry at hand, but do not explain why.  (Pltf's Memo page 10).

19100462 v1

this Circuit, is somehow convincing precedent that this Court should follow. Plaintiffs' entire argument in this regard should be rejected by this Court.

Plaintiffs argue that *Drakos* does not provide compelling precedent for the instant matter because the "the Court of Appeals' reasoning is difficult to defend", "difficult to understand", and "it is difficult to see how the Court of Appeals could not conclude that [brokerage commission claims] did not fall within 'maritime subject matter as required by the *Exxon* Court'". (Pltf's Memo, page 11). This is not a legal argument, but is rather Plaintiffs' counsel's opinion of the Second Circuit's reasoning in *Drakos*. *Drakos* has not been overturned, is exactly on point, and contains an analysis of a claim for brokerage commissions under both the preliminary contract doctrine and "nature and subject" test urged by Plaintiffs. *See Drakos*. According to the Second Circuit, looking at facts identical to those alleged here, such a claim is not cognizable under admiralty law no matter which test is used.

Plaintiffs' attempts to factually distinguish *Drakos* based on the merits of that case are totally ineffective. Plaintiffs argue that *Drakos* is factually distinguishable because the underlying charter agreements were not consummated, while in the case at hand charter agreements were actually signed. (Pltf's Memo, pages 12-13). However, even a casual reading of *Drakos* reveals that the Second Circuit did not rely on such facts in deciding that charterparty brokerage claims are not maritime under United States law. *See Drakos*. The issue of whether or not the underlying charters were ever concluded is totally irrelevant to the current inquiry and the sole issue before this Court is whether or not a claim for ship brokerage commissions vests this Court with admiralty jurisdiction. Considering Plaintiffs'

19100462 v1

earlier acknowledgement that under *Aqua Stoli* the merits of the dispute are not before this Court, it is clear that Plaintiffs' attempt to factually distinguish *Drakos* is simply another attempt to beguile this Court away from Plaintiffs' failure to plead a maritime cause of action.

### C) There is no Maritime Jurisdiction Under the "Nature and Subject" test

Under controlling Second Circuit precedent a charter brokerage agreement does not satisfy the "nature and subject" test urged by Plaintiffs. Plaintiffs cannot cite a single case using such analysis to find that brokerage agreement, essentially an agreement to find another party who will enter into a charter for a vessel, is maritime in nature because such contracts are not maritime. Plaintiffs instead refer the Court to a leading maritime law treatise, BENEDICT ON ADMIRALTY ("BENEDICT'S"). In a hopeless attempt to characterize decidedly land-based brokerage services as maritime, Plaintiffs recite a lengthy description of the service brokers may offer in arranging charter parties between shipowners and charterers. (Pltf's Memo, page 14). Plaintiffs failed to note that BENEDICT'S clearly states that an agreement "to procure a person to make one [a charter party], is not considered a maritime contract, and is not subject to the regulation of maritime law."[7] (BENEDICT'S 8:2.04; page 2-7).

Plaintiffs also ignored cases cited by Defendant that apply the nature and subject test *Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS*, 78 F.Supp.2d 162 (S.D.N.Y. 1999) (J. Scheindlin); *Tankship Intern., LLC v. El Paso Merchant Energy-Petroleum Co.*, 428 F.Supp.2d 93; and *Masherah v. Dettloff*, 968 F.Supp. 336 (E.D.Mi. 1997).

---

[7] The treatise goes on to note that *Exxon* casts doubt on the validity of *per se* exceptions to maritime jurisdiction.

19100462 v1

The plain facts before this Court are simple: Plaintiffs allege that they acted as a broker between two parties who entered into a charter. There is no allegation of any maritime activity performed by Plaintiffs. The service allegedly provided was simply to procure a charterer for a vessel. Plaintiffs do not allege any acts that could be considered maritime, such as Plaintiffs' use of the ship, carrying Plaintiffs' cargo aboard her, Plaintiffs' provision of services to the vessel, or any other activity so connected to the sea as to justify the exercise of maritime jurisdiction. Plaintiffs' efforts to camouflage this fatal flaw by using misleading defined terms, like "maritime contract", fall flat.

Plaintiffs have failed to identify any United States legal precedent that supports their application for a Rule B attachment. Plaintiffs cannot distinguish cases applying the very legal doctrine they ask this Court to apply, and instead selectively cite from cases and a treatise, parsing words and sentences that appear to support them, but which on investigation are inapposite. Plaintiffs also failed to cite precedent in this Circuit that is directly opposed to their position. In short, Plaintiffs have not offered a single legal reason why the instant Rule B attachment should not be vacated.

## POINT IV

## THE O'NEIL DECLARATION OFFERS PLAINTIFFS NO SUPPORT

Defendant has clearly shown, in Points I & II, *supra*, that United States law governs Plaintiffs' access to the United States procedural remedy of Rule B. Accordingly, the issue of whether or not Plaintiffs' claims are maritime under English law is irrelevant. Even so, the O'Neil Declaration offers no support for Plaintiffs' representation that their claims are cognizable in admiralty under English law. Neither case provided by Mr. O'Neil appears to

-12-

19100462 v1

invoke the maritime jurisdiction of the English Courts or arbitrator. Thus, Plaintiffs offer absolutely no evidence to support their representation that they have a maritime claim under English law. Instead, and consistent with Plaintiffs' other representations, the O'Neil declaration attempts to draw the Court away from the legal issue Plaintiffs are required to demonstrate.

The O'Neil declaration is full of speculation about whether Plaintiffs might assert a cause of action as a third party beneficiary, if Plaintiffs commence an arbitration, and if the arbitral panel determines that a future request by Plaintiffs for equitable relief will be considered by the arbitral panel, and further if the arbitral panel determines that the charter should be rewritten to include an explicit reference to the Plaintiffs (which it does not). There is no substance to this argument and it should be ignored.

The case Mr. O'Neil relies upon, *Nisshin Shipping Co Ltd v. Cleaves & Company*, is clearly distinguishable on its face from the instant situation. In *Nisshin*, the charter party agreements at issue contained a clause that identified the brokers by name and expressly provided the payment of commissions under those agreements. (O'Neil Dec. Ex 6, p. 38). In addition, the English Court found that the arbitration clause in the underlying charter agreements was broad enough to cover "a claim by the charterers against the owners for failure by the owners to perform their promise to pay commission to [brokers]". *Id.*. Thus, the issue before the *Nisshin* Court was not the ability of the broker to pursue a remedy directly, but rather the ability of the broker to step into the shoes of the charterer and commence an arbitration against the owner. *Id.* at 45. The *Nisshin* Court summarizes this approach at paragraph 40 of the decision:

19100462 v1

> The promise under these charter-parties to pay commission to the brokers was clearly a promise made to and enforceable by the charterers. Failure to perform that obligation would clearly fall within the scope of all the arbitration clauses. If the charterers had assigned their cause of action for failure to pay commission to the brokers by a statutory assignment the latter could only have enforced that promise if they resorted to arbitration against the owners. . . .The transference by assignment of the substantive chose in action necessarily involved the transference of the procedural means of enforcement of it.

*Id.* at 45.

*Nisshin* is thus clearly distinguishable from the facts. Here, Plaintiffs are not even named in the charter.

## POINT V

## THE AWARD OF ATTORNEY'S FEES IN THIS MATTER IS JUSTIFIED

Plaintiffs desperately attempt to convince this Court that an award of fees in this matter is not justified. The reality is that Plaintiffs invoked a harsh *ex parte* pre-judgment in blatant disregard of on-point precedent that precluded such action. As Judge Crotty recently observed: "The maritime attachment of Admiralty Rule B is an extraordinary remedy which requires the demonstration of due diligence by the party seeking relief". *Far Eastern Shipping Co. v. Progress Bulk Carriers, Ltd.*, Slip Op., 2008 WL 2035788 (Feb. 8, 2008 S.D.N.Y.). Clearly, Plaintiffs neglected to exercise any legal due diligence or they would have found *Drakos* and realized there is compelling precedent that the instant claim is non-maritime. Instead, Plaintiffs have forced Defendant to appoint counsel to fight a meritless attachment made for the improper motive of extorting a settlement from a party otherwise unable to recover its improperly attached funds. Even worse, the entire Rule B application is based on misleading statements of law and a mistaken assertion of maritime jurisdiction,

19100462 v1

in a jurisdiction where Defendant has no presence other than that occasioned by using the U.S. dollar.

## A. The Attachment was Meritless

As previously demonstrated, Caverton did not "miss" precedent supporting Plaintiffs' attachment because there is no such precedent. The plain fact, which Plaintiffs are unable to overcome, is that under United States law charterparty brokerage claims are not maritime in nature. Plaintiffs offer no argument that distinguishes their claims from this line of cases, pre- or post-*Exxon*. To the extent that *Exxon* applies, the Second Circuit applied the "nature and subject" test in *Drakos* and still found that charterparty brokerage obligations are non-maritime. District Courts in the Second Circuit have followed *Drakos*, and have rejected the unreported and non-precedental decision apparently relied on by Plaintiffs. Plaintiffs' Rule B attachment was meritless and not supported by existing law, though Plaintiffs represented otherwise.

## B. The Improper Motive is Self-Evident

Plaintiffs further contend that obtaining an *ex parte* attachment of $376,186.18 of Defendant's funds based on an incorrect and legally insupportable assertion of maritime jurisdiction does not demonstrate an improper motive. Defendant submits that seizing the funds of an entity that has no connection with the S.D.N.Y., other than engaging in U.S. dollar transactions, was designed simply to force a favorable settlement for Plaintiffs based on their possession of Defendant's funds. Plaintiffs have not shown any legal basis to apply for this attachment in the first place, but once the lack of a maritime claim was drawn

19100462 v1

to the attention of Plaintiffs' they should have released the attachment. Instead, Plaintiffs have forced the issue, requiring Defendant to expend even more resources in order to fight this wrongful attachment. In a recent case, *Stolthaven Houston, Inc. v. Rachel B, et. al*, 2008 WL 2854278 (July 18, S.D.N.Y.) (J. Patterson, Jr.) Judge Patterson awarded counsel fees based on a refusal to release attached funds where the attachment was legally unsupportable under Rule B. This Court should also award the attorney's fees expended by Defendant in obtaining the release of funds that were only attached because the Court was misled as to the exercise of maritime jurisdiction.

## CONCLUSION

All of Plaintiffs' attachments in the S.D.N.Y. should be vacated because Plaintiffs do not have a maritime cause of action under United States or English law. Moreover, Plaintiffs' misleading statements to this Court regarding the legal basis for the exercise of maritime jurisdiction are so egregious as to warrant the imposition of sanctions for Defendant's costs in vacating the Rule B attachments.

Dated: New York, New York
         August 4, 2008

                    WATSON, FARLEY & WILLIAMS (NEW YORK) LLP


          By: _____
                    Christopher P. Belisle (CPB-0119)
                    Neil A. Quartaro (NAQ-9640)
                    Attorneys for Defendant Caverton Marine Limited
                    100 Park Avenue, 31st Floor
                    New York, NY 10017
                    Tel: (212) 922-2200
                    Fax: (212) 922-1512

19100462 v1

TO: Chalos, O'Connor & Duffy, LLP
   Attorneys for Plaintiffs
   Harley Mullion & Co. Limited,
   Ernst Russ (UK) Ltd., Scandinavian Shipping
   366 Main Street
   Port Washington, NY 11050
   Attn.: Owen F. Duffy, Esq.
      George E. Murray, Esq.

19100462 v1

<u>CERTIFICATE OF SERVICE</u>

Neil A. Quartaro declares and states that:

I am not a party to these actions, am over 18 years of age and work in New York, New York.  I am an employee with Watson, Farley & Williams (New York) L.L.P. attorneys for Plaintiffs with offices at 100 Park Avenue, 31st Floor, New York, NY 10018.

On August 4, 2008, I served true copies of the attached Defendant Caverton Marine Limited's Affidavit of Neil A. Quartaro and Reply Memorandum of Law in Further Support of Motion to Vacate Attachment and in Support of Attorney's Fees:

Chalos, O'Connor & Duffy, LLP<br>
Attorneys for Plaintiffs<br>
Harley Mullion & Co. Limited,<br>
Ernst Russ (UK) Ltd., and Scandinavian Shipping<br>
366 Main Street<br>
Port Washington, NY 11050<br>
Attn.:  Owen F. Duffy, Esq.<br>
George E. Murray, Esq.

by furnishing delivering the same to an overnight courier with instructions to deliver them to Plaintiffs' counsel above.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on: August 4, 2008

Neil A. Quartaro

19100462 v1