USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
HARLEY MULLION & CO. LIMITED,        :
ERNST RUSS (UK) LTD.,                :
SCANDINAVIAN SHIPPING,               :
                                     :    08-cv-5435(BSJ)
            Plaintiffs,              :
                                     :
      v.                             :    Order
                                     :
CAVERTON MARINE LIMITED,             :
                                     :
            Defendant.               :
------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On June 17, 2008, this Court granted plaintiffs Harley Mullion & Co Limited ("Harley"), Ernst Russ (UK) LTD ("Ernst Russ"), and Scandinavian Shipping ("Scandinavian")(collectively "Plaintiffs") an *ex parte* Order for Process of Maritime Attachment and Garnishment (the "Attachment"). Plaintiffs are each engaged in business as brokers for maritime contracts and seek payment of certain commissions they allege are owed by Defendant Caverton Marine Limited ("Caverton") for ship brokerage services related to two charters.[1] Caverton now moves to vacate the Attachment pursuant to Rule E of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims. *See*

---

[1] Plaintiffs allege that this claim is subject to arbitration in London and do not place the merits of the dispute before this Court. (Compl. ¶¶ 17, 21). Instead, Plaintiffs seek only to obtain security for the alleged arbitration in London. (Compl. ¶ 24).

1

Fed.R.Civ.P. Supp. R. E(4)(f). For the reasons that follow, Caverton's motion is GRANTED.

## I. Facts and Procedural Background

The Verified Complaint (the "Complaint") alleges that the contract at issue in this litigation arose out of an exchange of emails on January 23, 2007 wherein Caverton agreed to pay Plaintiffs a percentage of the freights earned by its vessels in exchange for Plaintiffs acting as their representative agents/brokers with the negotiations of two charterparties involving the same vessel, the BW SAGA. (Compl. ¶ 6). The Complaint goes onto allege that Plaintiffs successfully assisted Caverton with the negotiations of the charterparties, entitling them to a portion of the freights earned as they became due as commission. (Compl. ¶ 10). According to the Complaint, Caverton made the first two monthly payments but refused to make any further payments thereby breaching its contract with Plaintiffs. (Compl. ¶¶ 12-14).

In their Complaint, Plaintiffs assert that the "exchange of emails between the parties is a maritime contract because charter party brokerage has a significant impact on maritime commerce." (Compl. ¶ 8). Alternatively, Plaintiffs contend that the brokerage agreement "is a maritime contract because it is based upon two maritime charter party contracts which are governed by English law and, under English law brokers can

enforce their rights in admiralty, even though they are not a party to a maritime charter party, by relying on the provision of Contracts (Rights of Third Parties) Act because a maritime charter party contract confers a benefit on brokers." (Compl. ¶ 9).

In support of its motion to vacate the Attachment, Caverton principally argues that Plaintiffs' claim for ship brokerage commissions is not a maritime claim under United States law and consequently cannot form the basis for an attachment under Supplemental Rule B. Caverton alternatively contends that Plaintiffs do not have a cognizable claim of any kind under English law. Both parties submit affidavits of English counsel in support of their respective contentions. (*See* Declaration of Mark Terence O'Neil, dated July 28, 2008; Declaration of Andrew Hutcheon, dated July 11, 2008).

## II. Discussion

Supplemental Admiralty Rule E(4)(f) affords a defendant an opportunity to come before the district court to contest a maritime attachment. Rule E(4)(f) provides in relevant part that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted

3

consistent with these rules."  Fed. R. Civ. P. Supp. R. (E)(4)(f).

At a Rule E(4) hearing the plaintiff bears the burden of showing that the attachment should not be vacated.  <u>Dolco Invs., Ltd., v. Moonriver Dev., Ltd.</u>, No. 06 Civ. 12876, 2007 WL 1237997, at *3 (S.D.N.Y. Apr. 26, 2007); <u>see also</u> <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2d Cir. 2006)("[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E.").  To sustain the attachment, a plaintiff must demonstrate that "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." <u>Aqua Stoli</u>, 460 F.3d at 445.

In the present case, Caverton does not contest that it cannot be found within the district or that its property may be found in the district.  Likewise, Caverton does not assert that there is a statutory or maritime law bar to the attachment. Rather, Caverton seeks to vacate the Attachment on the grounds that the Complaint fails to allege a valid admiralty claim, arguing that a contract for the provision of ship brokerage services does not give rise to a maritime cause of action.

### A. Sufficiency of Plaintiffs' Claim

As an initial matter, the parties dispute which law applies to the determination of whether Plaintiffs have pled a valid prima facie admiralty claim.[2] Caverton asserts that U.S. federal law should control while Plaintiffs contend that English law governs because Plaintiffs will prosecute the underlying claims against Caverton in a London arbitration where English law will substantively apply to their claims. This Court believes the better view is that federal law governs all questions concerning the validity of a Rule B attachment. If, in order to comply with the requirements set forth in *Aqua Stoli*, a claim must be valid under the substantive law that will govern the underlying action, parties initiating or responding to a Rule 4(E) challenge would be routinely required to litigate issues of foreign law and courts would have to probe into the merits of the underlying claim. This sort of detailed examination is inappropriate at a Rule 4(E) hearing as it would undermine the

---

[2] Following *Aqua Stoli*, the majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a "valid prima facie admiralty claim" is the "prima facie standard" rather than the more demanding "fair probability" or "reasonable grounds" standards. *See Dolco Inv., Ltd. v. Moonriver Development, Ltd.*, 486 F.Supp.2d 261, 266 (S.D.N.Y. 2007). Under the prima facie standard, a plaintiff need not present any evidence in support of his claim. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ.1979, 2007 A.M.C. 252, 258-59, 2006 U.S. Dist. LEXIS 95870, *16 (S.D.N.Y. Aug. 15 2006). A plaintiff's complaint must contain factual allegations that meet Supplemental Rule E(2)(a)'s heightened pleading standard by "stat[ing] the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. Supp. R. E(2)(a); *see also Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F.Supp.2d 399, 409 (S.D.N.Y.2007).

prima facie standard and is at odds with "the limited inquiry contemplated by *Aqua Stoli*." *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.*, 07 Civ. 3076, 2007 WL 1989309, *3 (S.D.N.Y. July 6, 2007).

Moreover, Rule B is procedural in nature and federal law applies to procedural issues even if foreign law governs the underlying claims. *See T&O Shipping, Ltd. V. Lydia Mar. Shipping Co. S.A.*, 415 F.Supp.2d 310, 314 (S.D.N.Y. 2006)(noting that "Rule B [attachment] is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law"); *see also Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356, 2006 WL 2854298 (S.D.N.Y., Oct. 6, 2006)(noting that a Rule B attachment is a procedural remedy). Accordingly, questions about the existence *vel non* of a prima facie admiralty claim should be determined by applying federal law. *See, e.g., Reibor International, Ltd, v, Cargo Carriers (KACZ-CO), Ltd.*, 759 F.2d 262 (2d Cir. 1985). Many courts in this district have consistently applied federal law to determine the validity of Rule B attachments even where foreign law applies to the underlying claim. *See, e.g., Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A.*, No. 05 Civ. 4550, 2005 WL 2218025 at *2 (S.D.N.Y. Sep. 9, 2005)(applying federal law to the motion to vacate even though English law was to be applied to the substantive questions in arbitration).

6

The Court does note that other courts in this district have held that the claim must be valid under the substantive law that will govern the underlying action. *See Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 536 (S.D.N.Y.2007) (holding that plaintiff failed to assert a valid prima facie admiralty claim because a contingent indemnity claim was not valid under English law, which governed the charter party); *OGI Oceangate Transp. Co. Ltd. v. RP Logistics PVT. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, *4 (S.D.N.Y. June 26, 2007) (stating that "[w]ithout an understanding of the applicable law, the Court is unable to determine whether [plaintiff] has a valid prima facie claim"). However, while this Court believes that federal U.S. law applies to the determination at hand, the Court's view of this issue does not affect the outcome here because Plaintiffs have failed to meet their burden of establishing a valid maritime claim under either U.S. or English law.

**B. No Valid Maritime Claim Exists Under Federal Law**

In determining whether a contract gives rise to maritime jurisdiction, courts should look to "the nature and the character of the contract," to see "whether it has reference to maritime service or maritime transactions," because "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." *Norfolk Southern Ry. Co. v.*

7

*Kirby*, 543 U.S. 14, 24-25 (2004); *see also Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991)(Supreme Court overruled the per se exclusion of agency agreements from maritime jurisdiction and instructed that "lower courts should look to the subject matter of the agency contract and determine whether the services performed under the contract are maritime in nature").

Here, Plaintiffs allege that they acted as a broker between two parties who entered into a charter.[3] The service they alleged to have provided, therefore, was simply to procure a charterer for a vessel. Plaintiffs do not allege that they undertook any obligations past the procurement of the charterparty contract and do not allege any other acts that

---

[3] Caverton argues both that the instant contract is not maritime under *Exxon*'s "nature and subject" test and that the "preliminary contract doctrine" bars claims arising out of brokerage agreements from maritime jurisdiction. Traditionally, disputes arising out of agreements preliminary to maritime contracts do not invoke maritime jurisdiction. *See, e.g., The Thames*, 10 F. 848 (S.D.N.Y. 1881)("The distinction between preliminary services leading up to a maritime contract and such contracts themselves ha[s] been affirmed in this country from the first."). The reasoning behind this "preliminary contract doctrine" is "that services that are preliminary to as opposed to being part of maritime contracts are too remote to be heard as maritime claims." *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 134 (1998) The preliminary contract doctrine has been consistently applied to brokerage contracts by courts in this district. *See, e.g., The Harvey and Henry*, 86 F. 656, 657 (2d Cir. 1898); *Christman v. Maristella Compania Naviera*, 293 F.Supp. 442, 443 (S.D.N.Y.1968); *Boyd, Weir & Sewell, Inc. v. Fritzen-Halcyon Lijn, Inc.*, 709 F.Supp. 77, 79 (S.D.N.Y.1989)(holding that "acting as a chartering broker is a preliminary matter and as such may not support admiralty jurisdiction."). Thus, if the preliminary contract doctrine remains good law, it would also bar the instant claim from maritime jurisdiction. However, whether the "preliminary contract doctrine" is still good law after the Supreme Court's decision in *Exxon* is an open question in this Circuit. *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 134 (1998).

could be considered "maritime in nature."[4] Under controlling Second Circuit precedent such a charter brokerage agreement does not satisfy the "nature and subject" test articulated by the Supreme Court in *Exxon*. *See Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 134 (1998) (Second Circuit held that alleged ship brokerage contract was not sufficiently "maritime in nature" under *Exxon* analysis);[5] *see also Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS*, 78 F.Supp.2d 162 (S.D.N.Y. 1999); *Tankship Intern., LLC v. El Paso Merchant Engery-Petrolium Co.*, 428 F.Supp.2d 93, 99 (D.Conn. 2006)(where the court, addressing the issue of whether a claim for ship brokerage services was cognizable in admiralty and relying on the Second Circuit opinion in *Drakos*, concluded that the Second Circuit would not view a brokerage contract as falling under its maritime jurisdiction.).

**C. There is No Valid Maritime Claim Under English Law**

As noted, the Court does not believe that the issue of whether Plaintiffs' claims are maritime under English law is relevant to the present determination. However, even if it

---

[4] In their opposition brief, Plaintiffs go on at length about the various "post fixture" duties which shipbrokers in general routinely assume but nowhere do plaintiffs allege that they assumed any such responsibilities in the instant case or that any such duties were part of the agreement at hand.
[5] Plaintiffs argue that *Drakos* is factually distinguishable because the underlying charter agreements were not consummated whereas here the charter agreements were actually signed. However, the Second Circuit did not rely on such facts in reaching its decision. Further, Plaintiffs do not explain how this factual distinction is relevant to the issue before this Court—whether or not the underlying brokerage contract is maritime in nature.

were, Plaintiffs have failed to establish that their claims are cognizable in admiralty under English law. Plaintiffs argue that they have a maritime claim under English law because the alleged agreement:

> Is based upon two maritime charterparty contracts which are governed by English law, and, under English law brokers can enforce their rights in admiralty even though they are not a party to a maritime charter party by relying on the provisions pf the Contract (Right of Third Parties) Act because a maritime charter party confers a benefit on brokers.

(Compl. ¶ 10).

However, the underlying Charters here make no reference to either broker's commissions for arranging the hire of BW SAGA or to the brokers themselves (Plaintiffs). (*See* Quartaro Aff. Exs. 1-2). Under the Contracts (Rights of Third Parties) Act, a third party must be identified in the contract or have rights conferred on it by that contract in order to be a third party beneficiary. (Hutcheon Decl. ¶ 4; O'Neil Decl. ¶ 11). The absence of such references in the underlying agreements makes the Contracts (Rights of Third Parties) Act inapplicable.[6]

---

[6] Plaintiffs contend that the exclusion of Plaintiffs from the charterparty is not fatal because "[u]nder English law, where a contract does not accurately or expressly reflect what has been agreed, a Court or arbitral Tribunal can rely on its equitable jurisdiction to rectify the written contract where the parties have by mistake failed to express these terms (or express them accurately) in the written contract." (O'Neil Decl. ¶ 10). Plaintiffs argue that they will appeal to the equitable powers of an arbitration tribunal to "rectify" the underlying agreements. Plaintiffs have submitted an opinion from an English Court that states that a court may "rectify an agreement if there was a common intention in regard to a particular provision of the agreement." (O'Neil Decl., Ex. 3). However, the opinion goes on to say that "an outward expression of accord and convincing proof that the concluded

Accordingly, Plaintiffs have failed to satisfy their burden of establishing that a valid maritime claim exists under English law.

### III. An Award of Attorney's Fees Is Not Justified

Caverton urges the Court to impose sanctions awarding Caverton the costs it expended in vacating the Attachment. "Generally, attorneys' fees awards in admiralty suits are discretionary and based on a finding of bad faith." *New York Marine & General Ins. Co. v. Tradeline*, 266 F.3d 112, 130 (2d Cir.2001). A party to an action acts in bad faith when it asserts a claim or mounts a defense entirely without color and "wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Comm. v. Dasa Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977). "Under the law in this Circuit, to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were 'entirely without color and made for reasons of harassment or delay or for other improper purposes.'" *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985)(quoting *Browning Debenture Holders'*, 560 F.2d at 1088).

---

instrument did not represent the parties' common intention were required." (*Id.*). Here, Plaintiffs have not put forth evidence that the parties intended to include the brokerage agreement in the charterparty or even alleged any facts which suggest that the charter should be "rectified" to include an explicit reference to Plaintiffs.

11

Caverton contends that "Plaintiffs' misleading statements as to the applicable law...satisfies the bad faith standard." (Def. Mem. at 9). The Court disagrees, finding no 'clear evidence' of either the meritlessness of Plaintiffs' claim or of any improper motive on Plaintiffs' part. Accordingly, the Court declines to award attorney's fees and costs.

### IV. Conclusion

Therefore, for the reasons set forth in this opinion, Caverton's motion to vacate the Attachment is GRANTED. The Court hereby vacates its <u>ex parte</u> Order dated June 17, 2008, granting Plaintiffs a maritime attachment and garnishment against Caverton.

**SO ORDERED:**

*[signature]*

**BARBARA S. JONES
UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          August 6, 2008